MICHAEL McNAMARA v. WILLIAM J. GARGETT.

[See *ante*, 303, 389.]

*Bohemian oat note and bond—Construction of contract—Fraudulent representation—Public policy—Consideration.*

1. Several instruments made at the same time, and having relation to the same subject-matter, must be taken to be parts of one transaction, and construed together, for the purpose of showing the *true* contract between the parties. *Sutton v. Beckwith*, 68 Mich. 303, 310.

2. A representation made by the payee in a promissory note, to the maker, that a so-called association, of which the payee claimed to be superintendent, was a corporation organized under the laws of this State, and in behalf of which he executed a bond or obligation, which formed the *real* consideration of the note, and without which it would not have been given, if *false*, will defeat a recovery by the payee upon the note, or by a purchaser before maturity with notice of such false representation before paying for the paper.

3. If a contract is at war with the established interests of society, and in conflict with the morals of the time, the fact that individuals may suffer by holding it void on the ground of public policy cannot affect the question, as the interests of individuals must in many cases be subservient to the public welfare.

4. If any part of the consideration of a contract is *illegal*, the *entire* consideration is *void*, because public policy will not permit a party to enforce a promise which he has obtained by an illegal act or promise, although he may have connected with the act or promise another which is legal. *Snyder v. Willey*, 33 Mich. 496.

5. The "Bohemian oat note and bond," so called, are held to form the contract between the parties, and are construed together, as though written upon the same piece of paper, and as between the original parties, and those purchasing the note with notice of the bond, are held void. See *Sutton v. Beckwith*, 68 Mich. 303; *Mace v. Kennedy*, Id. 389.

Error to Gratiot. (Hart, J.) Argued January 24, 1888. Decided February 2, 1888.

Assumpsit. Defendant brings error. Reversed. The facts are stated in the opinion.

*T. W. Whitney* and *C. J. Willett*, for appellant.

*James K. Wright* (*George P. Stone* and *James L. Clark*, of counsel), for plaintiff.

LONG, J. Plaintiff brought suit in the circuit court for Gratiot county against the defendant, by declaration upon the common counts in assumpsit, with copy of note attached. The note reads as follows:

"$125.00.                    SUMNER, October 21, 1885.

"Fourteen months after date, I promise to pay A. A. Griffith or bearer one hundred and twenty-five dollars, value received, with interest at seven per cent. per annum.

"W. J. GARGETT."

The defendant pleaded the general issue, and gave notice—

"That the defendant above named, on the trial of this cause, will give in evidence, under the general issue above pleaded, and insist in his defense, that said note above set forth in plaintiff's declaration was given without consideration; that said note was a Bohemian oat note; that same was procured from defendant by deceit and fraud, and that the same was fraudulent, and void at its inception; that the consideration of said note was void, on the ground of public policy; that said note was obtained from the defendant for an illegal purpose by the payee named therein; that the consideration for which said note was given was an impossible consideration, and that could not legally be carried out

without a breach of the law, and by perpetrating a fraud," etc.

The cause came on for trial before the court without a jury, and the court made a finding of facts and law as follows:

"On October 21, 1885, the defendant, William J. Gargett, purchased of one A. A. Griffith 25 bushels of Bohemian oats, agreeing to pay therefor $10 a bushel, making a total of $250; for the payment of one-half of which sum he executed to said Griffith the promissory note in suit, of which the following is a copy:

"'$125.00.                          SUMNER, October 21, 1885.

"'Fourteen months after date I promise to pay A. A. Griffith or bearer one hundred and twenty-five dollars, value received, with interest at seven per cent. per annum.          W. J. GARGETT,

"'Due December 24, 1886.      P. O. Address, Elm Hall, Mich.'

"The oats were delivered, and with them an obligation, partly printed and partly written, which entered into and formed a part of the contract, and executed by said Griffith as superintendent, of which the following is a copy:

"'No. 340.

"'A BOND FROM THE LENAWEE, CLINTON, AND GRATIOT COUNTY BOHEMIAN OAT ASSOCIATION.

"'(To be Signed by Our Superintendent, A. A. Griffith.,

"'We hereby agree to sell 50 bushels of Bohemian oats at $10 per bushel for Mr. Wm. J. Gargett, of Sumner township, Gratiot county, State of Michigan, on or before the twenty-first day of October, 1886. Said W. J. Gargett is to pay the L., C., and G. Association 12½ per cent. for bonding said oats, if he sells them himself, or 25 per cent. for selling and bonding, in cash, upon presentation of the orders and bonds. And the first oats sold by this or any other association, or by the owner, or any one else, shall be applied to the redemption of this bond.          A. A. GRIFFITH, Supt.'

"For feeding or consumptive purposes, the oats were not worth much more than ordinary oats; and the defendant knew they were not worth $10 a bushel, at the time of making the contract, for feeding purposes. He purchased them for the purpose of raising that kind of grain, and selling the whole or some portion again. He would not have made the purchase but for the bond or obligation above mentioned, and expected to pay the note if the association did as it

agreed to do, as expressed by the bond or obligation. The testimony does not show whether or not the oats were raised or furnished by Mr. Gargett with which to redeem the bond. But the grain mentioned in the bond never .was sold or bonded by or for defendant.

" The evidence that there was such an association as above mentioned is found on the face of .the bond or obligation. The parties selling the oats claimed that the association giving the bond or obligation was an incorporated company.

" Michael McNamara, the plaintiff, became the owner of the note by purchase about ten days after it was given, and long before its maturity; paying therefor its full face value. But at the time of the purchase he knew it was given for Bohemian oats, and knew of the nature of the contract that was made for which the note was given.

" The note and interest amounts to $142.50.

" Let a judgment be entered in favor of the plaintiff, and against the defendant, for the sum of $142.50.

" Also, let an order be entered staying execution, and that the defendant may have 20 days in which to remove this case to the Supreme Court.          HENRY HART,
                                        " Circuit Judge."

Judgment was entered in said court on the above findings on November 4, 1887, and the defendant brings error, and claims:

"1. That the findings of fact do not support the judgment.

"2. That the judgment should have been rendered for the defendant."

From the facts found by the court the plaintiff stands in no better position towards this note than the payee would have stood had he brought the suit in his own name. The court found that—

" Michael McNamara, the plaintiff, became the owner of the note by purchase about ten days after it was given, and long before its maturity; paying therefor its full face value. But at the time of the purchase he knew it was given for Bohemian oats, *and knew of the nature of the contract that was made for which the note was given.*"

We can construe the language of this finding in no other

light than that the plaintiff knew, before he paid his money on the purchase of this note, that the payee named in the note, at the time he obtained it from the defendant, made, executed, and delivered to the defendant the bond or writing set out in the findings; and that A. A. Griffith, the payee named, represented by such writing that he was the superintendent of the Lenawee, Clinton, and Gratiot County Bohemian Oat Association; and that Griffith, had by such writing agreed to sell for the defendant 50 bushels of Bohemian oats, at $10 per bushel, on or before October 21, 1886,—that is, two months before said note, by its terms, was to become due.

These two papers were made, executed, and delivered at the same time, and are to be construed together, in determining the contract between the parties. See *Sutton v. Beckwith, ante,* 310, and cases there cited.

The court also found that Griffith further represented that this Bohemian oat association was an incorporated company. All these representations the court finds were made known to the plaintiff before he purchased the note.

There is no statute in this State authorizing the incorporation of any such company, and the representation made by Griffith to the defendant that this so-called Bohemian oat association was an incorporated company was false, and known by this superintendent to be false at the time of procuring this note. It was a material representation, and one of the inducements to defendant to make his note and take this bond; and the court finds, from the evidence produced on the trial,—

" That the defendant would not have made the purchase but for the bond or obligation mentioned,"—

That is, the bond of a corporation which Griffith, the payee in the note, falsely induced the defendant to believe was an incorporated company; one which existed by authority of some act of the Legislature of this State. This fact would have defeated the recovery of the payee upon the note, and,

these facts all being known to the plaintiff before he paid a dollar for the note, must be held to defeat his recovery.

Is this contract also void on the ground of public policy? The defendant gave to Griffith $125 in money, and his note for $125, payable 14 months from date, with 7 per cent. interest, and received from said Griffith 25 bushels of Bohemian oats (which the court finds were worth not much more than ordinary oats), and an agreement in writing, signed by Griffith, promising to sell on or before one year from date 50 bushels of Bohemian oats for the defendant at $10 per bushel, and to receive upon such sale a commission of 25 per cent. if the company which Griffith represented made the sale, and 12½ per cent. commission if the defendant made the sale, or found the purchaser, at $10 dollars per bushel; and the court finds " that the defendant would not have made the purchase but for such bond or obligation."

The carrying out of this obligation on the part of Griffith meant the finding of another victim, within one year, who would take 50 bushels of Bohemian oats at $10 per bushel, upon the giving to him of a contract to sell for him, the next year after, 100 bushels at $10 per bushel, and so on *ad infinitum*, and increasing the number of bushels to be sold each year, in geometrical progression; and from this contract alone, on the tenth year, the enormous amount of the sale must be 25,600 bushels at $10 per bushel, if this contract is carried out. The Court cannot shut its eyes to the fact that this is only one of the thousands of similar contracts made within this State within the last few years, and that the unwary, unsuspecting, and too credulous farmers have been made the victims of sharpers and swindlers, who, by their seductive arts have worked upon the natural love of gain which most men possess, and thus reaped a rich harvest from those whom the law should protect. The very scheme itself bears evidence upon its face that it is a fraud and a snare, and yet so cunningly devised that, in the hands of a sharp

shrewd, and designing man, hundreds of the unwary have been defrauded; and the courts should set their seal of condemnation upon it, and pronounce it, as it is, a contract void on the ground of public policy. It is upon its face a gambling contract.

Mr. Greenhood, in his work on Public Policy, says:

"By public policy is intended that principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public, or against the public good, which may be termed the policy of the law, or public policy in relation to the administration of the law. The strength of every contract lies in the power of the promisee to appeal to the courts of public justice for redress for its violation. The administration of justice is maintained at public expense; the courts will never, therefore, recognize any transaction which, in its object, operation, or tendency, is calculated to be prejudicial to the public welfare."

Walker, J., in *Hotzger v. Cleveland* ( Marion superior court, Indiana), 3 Ind. Law Mag. 42, 50, speaking upon this question, says:

"We may take it as well settled that, in the law of contracts, the first business of the courts is to look to the welfare of the public; and, if the enforcement of the agreement would be inimical to its interests, no relief could be granted to the party injured, even though it might result beneficially to the party who made and violated the agreement."

Mr. Story says:

"Public policy is in its nature so uncertain and fluctuating, varying with the habits and fashions of the day, with the growth of commerce and the usages of trade, that it is difficult to determine its limits with any degree of exactness. It has never been defined by the courts, but has been left loose and free from definition in the same manner as fraud. This rule may, however, be safely laid down, that wherever any contract conflicts with the morals of the time, and contravenes any established interest of society, it is void, as being against public policy." Story, Cont. § 675.

Some of the courts, speaking upon this subject, have said that the immediate representatives of the people in legisla-

ture assembled would seem to be the fairest exponents of what public policy requires, as being most familiar with the habits and fashions of the day, and with the actual condition of commerce and trade, their consequent wants and weaknesses ; that legislation is least objectionable, because it operates prospectively, as a guide in future negotiations, and does not, like a judgment of a court, annul a contract already concluded.

Such contracts in this State have already had the seal of condemnation stamped upon them by the legislative branch of the State government by Act No. 20, Laws of 1887, being—

"An act to prevent the taking of bonds, promissory notes, and other evidences of indebtedness, in whole or part consideration of bonds, contracts, and other agreements for the sale of grain, seeds, and other cereals at a *fictitious* price, and to prevent the sale and transfer of such evidences of indebtedness, and to provide a punishment therefor."

This act may at least be taken as an exponent of public disapproval of all such contracts.

The argument that holding such contracts void on the ground of public policy annuls a contract already concluded has no force. If the contract is at war with the established interests of society, and is in conflict with the morals of the time, the fact that individuals may suffer can in no manner affect the question, as the interests of individuals must in many cases be subservient to public welfare. It is essentially a gambling contract, and one impossible to be performed. The contract is that Griffith shall sell for Mr. Gargett 50 bushels of his (Gargett's) Bohemian oats, at $10 per bushel, on or before October 21, 1886. No man can, in legal contemplation, force the sale of another's property by a given day, or by any day, by his own act. *Stevens v. Coon*, 1 Pin. (Wis.) 357.

These oats were worth no more than any other oats, for any useful purpose, and Griffith knew that these oats, at any time up to October 21, 1886, could not be sold legitimately

for more than any other oats, and that they could not be sold for $10 per bushel in any legitimate and lawful transaction; that the only way in which they could be so sold was by the perpetration of another and similar fraud upon some other unsuspecting victim to his arts and wiles. The contract is one that Gargett could not have enforced, had Griffith failed to call for and sell the oats. In such cases the courts must leave the parties where it finds them. If either party has, however, been defrauded, he may have his action for the fraud, but could not enforce the contract.

It is said, however, that Gargett received 25 bushels of oats, and ought not to be permitted to complain, as there is not a total failure of consideration. But the trouble is, the whole contract is tainted and avoided by the part of the consideration which is illegal. If any part of a consideration is illegal, the whole consideration is void, because public policy will not permit a party to enforce a promise which he has obtained by an illegal act or promise, although he may have connected with the act or promise another which is legal. 1 Pars. Cont. 457; *Snyder v. Willey*, 33 Mich. 496.

Had the note gone into the hands of a *bona fide* holder,—one who purchased for value before maturity, and without notice of the consideration for which it was given,—the principles which we have laid down would not apply. It is not intended to run counter to the rules of the law merchant governing negotiable instruments, but we have taken the note and bond together as forming the contract between the parties; and construing them together, as though written upon the same piece of paper, and as between the original parties and those purchasing with notice, we hold such contracts void.

The judgment of the court below must be set aside, and judgment entered in this Court in favor of defendant, with costs of both courts.

The other Justices concurred.