## LA FRANCE v. CULLEN.

1. SALES—CONTRACTS—INSTRUCTIONS.

   In an action of replevin to recover a piece of furniture sold under a contract providing for the retention of title in the seller until full payment of the purchase price, where defendant received a card containing printed matter providing for her possibly securing the goods by a drawing without paying for them at the time of signing the contract, an instruction that if the jury should find the defendant held the goods also under such printed arrangement plaintiff could not recover, was proper.

2. CONTRACTS—GAMBLING CONTRACTS—STATUTES.

   An agreement between the seller and purchaser of furniture whereby the furniture might be secured by the purchaser by a drawing to be held by members of a furniture club at less than the purchase price, constitutes a gambling contract under 3 Comp. Laws, § 9931 (3 Comp. Laws 1915, § 15050).

3. SAME—CONSIDERATION—PARTIAL ILLEGALITY.

   If any part of the consideration of a contract is illegal the whole consideration is void.

Error to Bay; Sharpe, J., presiding. Submitted April 5, 1917. (Docket No. 43.) Decided June 1, 1917.

Replevin in justice's court by Peter La France against Delia Cullen. There was judgment for plaintiff, and defendant appealed to the circuit court. Judgment for defendant. Plaintiff brings error. Affirmed.

*James Donnelly,* for appellant.

*Stoddard & McMillan,* for appellee.

KUHN, C. J. The plaintiff brought an action of

replevin in the justice's court to recover a buffet from the defendant. In that court he was successful in his contention, and on appeal to the circuit court, where the case was tried before a jury, a verdict was rendered for the defendant, and the property ordered returned.

The plaintiff is the proprietor of a furniture store in the city of Bay City, Mich., and on November 14, 1912, entered into a contract with the defendant whereby the defendant purchased the buffet under a lease or installment contract for the sum of $37. Five dollars was paid down at the time of the purchase, and the buffet was delivered to the defendant's home by employees of the plaintiff. The contract entered into between the parties was written, and stated that the transaction was a lease with the title remaining in the plaintiff until the buffet was fully paid for. At the same time the defendant was given a card upon which were to be credited the weekly payments made by her, and on the back of the card appeared the following:

"We agree to sell to holder of this contract any of the articles herein listed for $15.00 in advance at the rate of 25 cents or more weekly. As a special advantage to customer holding this contract we will place a $15.00 article for less than cost every week in each section to advertise the business, and the party who receives this $15.00 article will be given a clear receipt regardless of what amount they have paid. Recipients of advertising articles will be selected by the management to advertise the business, this method being used instead of paying out thousands of dollars for catalogues. No money can be lost during the life of this contract, as amount paid is held to holder's credit, and can be applied on any $15.00 article. No orders are accepted on articles for less than $15.00, no money refunded on discontinued or lapsed contracts, but customers wishing at any time to pay the balance due on their contract to $15.00 in one pay-

ment will be allowed a discount of 10 per cent. If customer fails to make payment regularly, said customer forfeits benefits for time back in payments, or otherwise by special agreement with our collector. No lottery methods of any kind enter into this contract, and we do not authorize agents to make statements or arrangements, verbal or written, either to add, change, erase, infer or specify terms contrary to this contract, and contract holder agrees not to enter into arrangements with agent, contrary to contract; any such arrangements will not be recognized by us.

"As evidence that I have read and fully agree to the terms of this contract, I make my first payment."

Some dispute arose about a damage to the buffet, which it is claimed the plaintiff agreed to repair, but the defendant continued to make payments until the sum of $33 had been paid, when she refused to pay any more, and thereupon this litigation was instituted.

The principal assignment of error and the one upon which this case turns relates to whether or not the court erred in admitting the testimony with reference to what was printed upon the card which was delivered to the defendant at the time she made the purchase of the buffet in question. It is the contention of the appellant that what was printed upon the back of the card and what was said to the defendant with reference thereto was severable from the contract upon which plaintiff now bases his right to recover, and was an entirely different and separate transaction. The learned trial judge instructed the jury with reference to this claim as follows:

"The law requires that plaintiff to maintain his suit must have made demand, and there must have been a refusal on her part to deliver the possession back to him. It is the claim of defendant that, even if you find that fact in favor of the plaintiff, if you find that the demand was made, that still the plaintiff in this case is not entitled to recover. The defendant claims that at the time this contract, as it is termed here, was entered into, that the same time another agree-

ment was entered into, an agreement in writing printed on a card; that was delivered to Mrs. Cullen, and it is claimed by defendant that that was made a part of this contract. The plaintiff denies that. Now it is for you to say whether or not that was true. If you find that it was true, if you find that the arrangement that Mrs. Cullen held this property under was not only that in the written contract or lease which she signed, but also in the card providing for a drawing and her getting, perhaps, this property without fully paying for it as provided in this card, then I say to you that the plaintiff in this case cannot recover in this suit, because that is an illegal contract as provided for in our law."

We are of the opinion that under the circumstances of this case the trial judge was correct in submitting the question to the jury in the way that he did. The defendant testified that she would not have purchased the buffet, which she claims she did not need, if it had not been for the inducement that was offered her to enter into this club arrangement through which she hoped that she "might be lucky and get a cheap piece of furniture." She further testified:

"Mr. La France sent for me to come over that he had a club he wanted me to join; so he said, 'You can have any piece of furniture in the store you want'; so I thought it over, and he showed me this buffet; so I thought if joining the club that if I would be lucky to draw the right number that would give me a cheap buffet. About the club, there was so many members in the club, I don't just remember, and there was to be a drawing taken place each week to some of these members, so he told me where there was a drawing to take place, and I went to this place, but there wasn't any drawing to this place, but Mr. Bloch, that was his agent for the club, brought an envelope over to the house, and I drawed one ticket, but he kept the ticket himself. * * * I was told by Mr. La France, maybe about a week after that, that there would be a drawing. He told me every week there would be a drawing. It might have been

two weeks after that, as near as I can say, when Mr. Bloch came with the ticket that I spoke of. Mr. La France said that I would have to do no more on my contract in case I drew a lucky number; the buffet would be mine. Mr. La France gave me the card the day I paid him the $5."

It is also clear to us that the contract or agreement on the back of the card was illegal and amounted to a gambling contract under section 14856, 5 How. Stat. [2d Ed.] (3 Comp. Laws 1915, § 15050). This statute had the consideration of this court in *People* v. *McPhee*, 139 Mich. 687 (103 N. W. 174, 69 L. R. A. 505, 5 Am. & Eng. Ann. Cas. 835), where Justice Ostrander, writing the opinion, said, with reference to a similar scheme, the purpose of which was to increase the business, although there was no chance for the members of the club to sustain a loss:

"It cannot be denied that the respondent sought to, and presumably did, increase his business by a device or scheme, the feature of which, so far as securing patrons and customers was concerned, was the chance to obtain $20 worth of clothing for some sum of money less than $20. It was calculated to, and did, appeal to the gambling propensity of men, was within the mischief at which the legislation is aimed, was within the terms of the statute, and, in our opinion, a disposition of property by way of lottery.".

It is also the established law in this State that, if any part of the consideration of a contract is illegal, the whole consideration is void. See *McNamara* v. *Gargett*, 68 Mich. 454 (36 N. W. 218, 13 Am. St. Rep. 355). The jury, by their verdict, must have found that one of the inducements which led the defendant to enter into the lease was that the plaintiff explained the card arrangement and the drawing to her, and that she might perhaps get this piece of furniture for less than the contract price. The charge of the court fully covered the questions at issue and submitted

them to the jury with proper instructions as to the law.

Finding no error, we affirm the judgment of the court below.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.