[Crim. No. 1401.  Second Appellate District, Division Two.—January 27, 1927.]

## In the Matter of the Application of S. J. BLANC et al. for a Writ of Habeas Corpus.

[1] HABEAS CORPUS—INQUIRY INTO EXTRINSIC FACTS—RECORD—JURISDICTION.—In a proceeding on *habeas corpus* to secure release from custody under a complaint charging violation of a city ordinance, where the record consisted of a petition under oath, alleging the jurisdictional facts required by section 1474 of the Penal Code, with copies of the ordinance and complaint, and the return, accompanied by the written authority by which the prisoners were restrained, in accordance with section 1480 of the Penal Code, inquiry into extrinsic facts *dehors* the record is not authorized, since the only purpose of the writ is to ascertain whether or not, under the proofs upon which the prisoners were committed, the lower tribunal had jurisdiction to act.

[2] CONSTITUTIONAL LAW — ENGAGING IN LAWFUL PURSUIT — REGULATIONS—POLICE POWER.—Discretion in the proper administration of the police power is permitted all constituted authorities, but a lawful pursuit which is not an infringement upon public health, morals, or safety, or the general welfare, is not a subject of police regulation, and is exempt from governmental concern unless necessarily and properly taxable for revenue.

[3] ID.—MUNICIPAL CORPORATIONS—LOS ANGELES—ORDINANCE REGULATING SALE OF MERCHANDISE BY ENDLESS CHAIN PLAN.—An ordinance of the city of Los Angeles, regulating the sale of merchandise by what is known as the "endless chain" plan, which was not merely

---

1. See 13 Cal. Jur. 274; 12 R. C. L. 1239.
2. See 5 Cal. Jur. 703, 709; 6 R. C. L. 222.
3. See 18 Cal. Jur. 840; 19 R. C. L. 813.

a regulatory enactment, but vested full power in police commissioners to regulate as well as to destroy, without establishing any standard of business integrity up to which a merchant may measure, and which endowed the commissioners with full authority to grant a petition of the disreputable and to deny that of the most creditable merchant, is unconstitutional.

[4] ID.—AUTHORITY TO WITHHOLD PERMIT—POLICE POWER.—The authority to withhold a permit to engage in lawful business, to be sustained, must be regulated by reasonable provisions of law which apply to matters of conduct upon the part of the applicant in some way affecting the health, morals, or safety of the community, and the law must fix the standards with such certainty that citizens may be apprised of their requirements, it not being enough that the persons clothed with the power to withhold the permit may not use it or may establish their own conditions, for if they have the power to act regardless of any legislative guidance or control, the authority conferred is arbitrary and unlawful.

(1) 29 C. J., p. 30, n. 15, p. 163, n. 20.   (2) 12 C. J., p. 921, n. 61, p. 946, n. 28 New.   (3) 12 C. J., p. 946, n. 28 New.   (4) 12 C. J., p. 913, n. 60.

APPLICATION for a Writ of Habeas Corpus to secure release from custody under a warrant charging violation of a city ordinance.

The facts are stated in the opinion of the court.

Mitchell, Silberberg & Davis for Petitioners.

J. M. Friedlander, City Prosecutor, and A. T. Folsom, Deputy City Prosecutor, for Respondent.

CRAIG, J.—The petitioners were arrested and are detained upon a warrant issued by the municipal court pursuant to a complaint charging them with conducting, operating, and carrying on "a certain plan and scheme and system of merchandising by means of an endless chain for the sale of silk hosiery and ladies' underwear and men's furnishing, . . . without first having obtained from the Board of Police Commissioners of the City of Los Angeles a permit so to do." It is admitted that the acts complained of were contrary to the provisions of a municipal ordinance regularly adopted and approved by the properly constituted authorities, and that it is still in force.

The ordinance in controversy, and under which the petitioners were sought to be prosecuted, is known as No. 53,315, and is entitled ''An ordinance regulating the sale of merchandise or other property by means of the plan commonly known as the 'Endless Chain,' '' By its terms ''Endless Chain'' is said to mean and include:

'' . . . any plan or scheme wherein any person, firm, or corporation, sells, transfers, assigns or issues to any person any right, property, ticket, coupon, certificate, contract, or other token, and wherein the purchaser, transferee or assignee thereof or the person to whom the same is issued, undertakes or is required or permitted to undertake, for himself, or as the agent, representative, or attorney of such person, firm, or corporation, to sell, transfer, assign, or issue to another any right, property, ticket, coupon, certificate, contract or other token which may under certain conditions entitle the purchaser or recipient thereof to any right, property, ticket, coupon, certificate, contract, or other token from the original purchasers, transferees, or assignees thereof are also given, as a consideration for their entry into or participation in such plan or scheme and their purchase or receipt of such right, property, ticket, coupon, certificate, contract, or other token, the right, privilege or obligation of making further sales, assignments, or transfers of any right, property, ticket, coupon, certificate, contract, or other token.''

Hence, any person who sells or issues to another a right or contract by the terms of which the latter undertakes or is required or permitted to undertake, either personally or by agent, to issue to a subsequent person any right, property, contract, or token ''which may under certain conditions entitle the purchaser or recipient thereof to any right, property . . . contract, or other token and wherein the purchasers, . . . from the original purchasers, . . . or from subsequent purchasers, . . . are also given, as a consideration for their entry into or participation in such plan or other token, the right, privilege or obligation of making further sales . . . of any right, contract, or other token,'' shall, unless previously authorized in writing by permit from the board of police commissioners so to do, be guilty of a misdemeanor. Further, it is required by the ordinance that any person, firm, or corporation desiring such permit shall file with the board a verified or

sworn statement, setting forth the names and addresses of all members of the firm or corporation, together with a statement of the applicant's financial condition, its assets and liabilities, giving full details of its plan of operation, together with copies of any written or printed matter proposed to be used therewith.

It is conceded that the petitioners when arrested were conducting, without having procured the permit above mentioned, a merchandising enterprise under the style of Golden State Sales Corporation, by means of contracts the contents, purpose, and effect of which were such as the terms of the ordinance sought to regulate, and this is the offense with the commission of which they have been charged.

The petitioners contend that the ordinance is unconstitutional, in that it is discriminative, vests an arbitrary power in the board, and that by requiring an application, financial statement, and literature from each agent, solicitor, and canvasser, its ultimate object and effect is prohibitive.

They argue that no particular personal qualifications, financial standing, or form of contract is specified as a standard; that there is no duty of the board, or assurance to the merchant, that such information when furnished may or may not, together with, or without, "such further information as said board may require," entitle an applicant to a permit; and that it lies entirely within the arbitrary discretion of the police commissioners to grant one application and to deny another upon the same state of facts.

[1] Each of the respective parties to this proceeding has devoted much argument to assumed conditions which, if they exist, would not assist in determining as to whether or not the questioned enactment is constitutional. A sample of the contract as printed and circulated by particulars is attached to the petition herein, and its various provisions are attempted to be construed and their virtues expounded. Conversely, the endless chain system is attacked by respondent as "mathematically, commercially and financially unsound"; dangers of their use as gambling mediums or swindles are attempted to be demonstrated, and it is asserted generally that the community should protect itself against the machinations of unscrupulous sharpers. But these are considerations *dehors* the record and foreign to the constitutional question which is alone before us for our determination.

No issue was presented nor evidence adduced in the municipal court after the issuance and execution of the warrant upon which the petitioners are held. In such cases the record consists of a petition under oath, alleging the jurisdictional facts required by section 1474 of the Penal Code, with copies of the ordinance and complaint (*In re Crowley,* 171 Cal. 58 [151 Pac. 739]), and the return, accompanied by a copy of the written authority by virtue of which the petitioners are restrained of their liberty. (Pen. Code, sec. 1480.)

Upon this record inquiry into extrinsic facts is not authorized in *habeas corpus,* since the only purpose of the writ is to ascertain whether or not under the proofs upon which the prisoners were committed, the lower tribunal had jurisdiction to act.

[2] Therefore the only proposition here is: Is the ordinance a valid exercise of the police power, or is it in violation of the constitutional guaranties by which the petitioners are surrounded? It has been held that if a board be invested with the right not only to determine that a given vocation is unsafe, but to require other methods of conduct and thus control the livelihood of another, legislation which affords such authority is unconstitutional. (*Yick Wo* v. *Hopkins,* 118 U. S. 356 [30 L. Ed. 220, 6 Sup. Ct. Rep. 1064, see also, Rose's U. S. Notes].) We are not unmindful of the fact that discretion in the proper administration of the police power is permitted all constituted authorities, but a lawful pursuit which is not an infringement upon public health, morals, or safety, or the general welfare, is not a subject of police regulation, and is exempt from governmental concern unless necessarily and properly taxable for revenue. (*Ex parte Quarg,* 149 Cal. 79 [117 Am. St. Rep. 115, 9 Ann. Cas. 147, 5 L. R. A. (N. S.) 183, 84 Pac. 766]; *Sonora* v. *Curtin,* 137 Cal. 583, 585 [70 Pac. 674].)

[3] We think that the ordinance before us is incapable of construction as merely a regulatory enactment. It vests full power in the police commissioners, not only to regulate but to destroy. Nowhere within its four corners do we find any standard of business integrity up to which a merchant may measure, any safeguard for the protection of the public which he may supply, any guaranty of honesty and fair dealing which he may furnish, or condition of any character

with which he may comply and have the right to demand and receive a permit. It is true that the ordinance requires that certain information be furnished the commissioners concerning the financial condition of the applicant, his reputation, etc., but nowhere is it provided that if in all respects as to which inquiry is made and information supplied, no shadow is cast upon his character, financial standing, or plan of merchandising, a permit will be issued. We do not assume that a board would issue permits to applicants furnishing entirely negative reports; yet it is elementary that no board may exercise arbitrary and unguided discretion, and the fact that this ordinance endows the commissioners with full authority to grant a petition of the disreputable and to deny that of the most creditable merchant, renders it obnoxious both to constitutional precepts and democratic principles. The same rule was applied in *Hewitt v. State Board of Medical Examiners,* 148 Cal. 590 [113 Am. St. Rep. 315, 7 Ann. Cas. 750, 3 L. R. A. (N. S.) 896, 84 Pac. 39], wherein was involved a statute which forbade advertising by the publication of "grossly improbable statements." The supreme court there said, "the members of one board might conclude that it contained 'grossly improbable statements,' while another board might reach an entirely opposite conclusion," that "One might conclude that the statement while 'improbable' was not 'grossly' so." Such legislation has repeatedly been condemned by the courts of this state. (*Los Angeles County v. Hollywood Cemetery Assn.,* 124 Cal. 344 [71 Am. St. Rep. 75, 57 Pac. 153]; *Ex parte Drexel,* 147 Cal. 763 [3 Ann. Cas. 878, 2 L. R. A. (N. S.) 588, 82 Pac. 429]; *Ex parte Sing Lee,* 96 Cal. 354 [31 Am. St. Rep. 218, 24 L. R. A. 195, 31 Pac. 245]; *In re Farb,* 178 Cal. 592 [3 A. L. R. 301, 174 Pac. 320]; *In re Williams,* 74 Cal. App. 331 [240 Pac. 42].)

Here we have an attempt to confer upon a commission the right to arbitrarily decide in any case not only whether or not a chain system is inimical to the public welfare, but even if entirely free from features having any tendency to deceive or defraud, to arbitrarily refuse to allow its operation. It seems impossible to conceive that a law which would thus place it within the power of a single commission to deny a citizen the right to contract, the privilege of earning a living, merely and solely because the commission should not see fit to allow him to do so, can be justified or defended.

Respondent cites in support of the ordinance in controversy but one case which we think in any way analogous to the instant one. *Hubbard* v. *Freiberger*, 133 Mich. 139 [94 N. W. 727], was an action upon a promissory note given by the defendant to a wagon dealer on account of the purchase price specified in an endless chain contract. It was held that the contract was against public policy and void, and that the note was therefore 'without consideration. The court there announced, however, that "It is a scheme which, upon its face, shows that it cannot be worked out without ultimately leaving parties with these so-called coupons on their hands, possessing no value." The decision was rendered upon appeal after a trial in which, among other evidence, the contract was received, and was contained in the record before the supreme court of Michigan. No constitutional question was involved. Unlike that situation, we have here not a particular contract the consideration of which is questioned, but an ordinance whose validity is challenged. Assuming that some endless chain schemes may be against public policy, it cannot be said that all such systems, especially as limited by the definition contained in the ordinance before us, are void. Yet, a sales system by which in endless succession purchasers of goods might be authorized to sell to others doubtless might be devised so as to give full value to each. Under this ordinance such a plan might be denied permission to operate in a community, and the owner of another of a grossly swindling character be granted a permit.

The decision in the case last mentioned is based principally upon the authority of *McNamara* v. *Gargett*, 68 Mich. 454 [13 Am. St. Rep. 355, 36 N. W. 218]. What we have said of the dissimilarity of the situations presented in the case at bar and in *Hubbard* v. *Freiburger, supra,* is obviously equally applicable here. In the former case it appeared that the Bohemian Oats Association, which was found to have no legal existence, sold twenty-five bushels of oats, worth little more than ordinary grain, for $125 in cash and a promissory note for $125, upon condition that the buyer should undertake to sell within fourteen months fifty bushels more at $10 per bushel, and receive a commission of ten per cent, or twenty-five per cent, according to the manner in which the sale might be consummated. It was held that such contract

was a gambling venture, was against public policy, extorted an exorbitant present price for the oats, and fixed a fictitious future value.

As upholding the right of the police commission to grant or reject applications for permits without other limitation or guidance than that afforded by the ordinance under consideration, respondent refers to several decisions which we will briefly distinguish. In *People* v. *Monterey Fish Products Co.*, 195 Cal. 548 [38 A. L. R. 1186, 234 Pac. 398], it is said, as quoted in respondent's brief, the discretion of the commission is neither unguided nor uncontrolled, but that its exercise is made dependent upon findings of fact after a hearing. In *Leach* v. *Daugherty*, 73 Cal. App. 83 [238 Pac. 160], the rule is announced that: "It is a well-settled principle of law in this state that by legislative act a commission or board may be empowered to *ascertain the existence of facts, upon the finding of which may depend* the right to continue in the practice of a profession or a regulated business." The act there upheld specifies certain facts to be found and upon the determination of which the ruling of the commission upon application for a permit is required to be based. The same is true of the statute construed in *Riley* v. *Chambers*, 181 Cal. 589 [8 A. L. R. 418, 185 Pac. 855], and *Brecheen* v. *Riley*, 187 Cal. 121 [200 Pac. 1042]. Under the provisions of that statute the showing required to be made to secure a broker's license was that the applicant be "honest, truthful, and of good reputation." Here is a definite standard of eligibility. If the facts be established the applicant might demand and secure a license. No such provision is contained in this endless chain ordinance. In both *Co-operative Junk Co. of California* v. *Board of Police Commrs.*, 38 Cal. App. 676 [177 Pac. 308], and *Goytino* v. *McAleer*, 4 Cal. App. 655 [88 Pac. 991], the nature of the business involved was such as to be peculiarly appropriate to police supervision, and in each decisions of questions of fact were held to be controlling as to the action of the commission.

[4] In any case the authority to withhold a permit to engage in lawful business, to be sustained, must be regulated by provisions of the law which are reasonable and which apply to matters of conduct upon the part of the applicant in some way affecting the health, morals, or safety of the

community. The law must fix standards with such certainty that the citizen may be apprised of their requirements, and it is not enough that the commissioners may establish their own conditions. If they have the power to act regardless of any legislative guidance and control, the authority conferred is arbitrary and unlawful. "It does not answer the charge that the act in question is unconstitutional to say that a person clothed with such power may not see fit to use the power. The rule in determining whether the act is in conflict with constitutional guaranties is whether or not the act is broad enough to authorize such unconstitutional act." (*People* v. *Pace,* 73 Cal. App. 548 [238 Pac. 1089].)

Other provisions of the ordinance are attacked upon constitutional grounds, but since they are not the basis of the prosecution out of which this proceeding has resulted, a discussion of them would be inappropriate.

As a necessary result of the views herein expressed, it is ordered that the petitioners be discharged.

Works, P. J., and Thompson, J., concurred.