[Crim. No. 1832. Third Dist. Mar. 28, 1944.]

In re JAMES PORTERFIELD, on Habeas Corpus.

Clarence E. Todd for Petitioner.

Glenn D. Newton for Respondent.

THOMPSON, J.—By means of habeas corpus the defendant seeks to obtain his release from custody after having been convicted of violating an initiative ordinance of the city of Redding prohibiting soliciting, for compensation, without a license, memberships in organizations requiring the payment of dues.

It is contended the ordinance is void for the reason that it violates the right of freedom of speech guaranteed by the federal and state Constitutions, and because it discriminates against labor organizations. It is also asserted the petitioner did not engage in the *business* of soliciting memberships, and that the ordinance therefore has no application to his activity in that regard.

A complaint was filed in the City Court of Redding March 10, 1942, charging petitioner with violating sections 2, 4 and 7 of said ordinance, by wilfully and unlawfully engaging in soliciting, for compensation, without procuring a license therefor, in said city on the last mentioned date memberships in Construction and General Laborers Union, Local 961, which organization requires the payment of dues from all members.

Upon trial he was convicted of that offense, and sentenced

to pay a fine of twenty-five dollars, or upon failure to do so, that he be imprisoned in the county jail one day for each unpaid two dollars of said fine. No part of the fine was paid. The petitioner applied to the Superior Court of Shasta County for a writ of habeas corpus, which was denied. The petition was then filed in this court.

At the trial the defendant failed to take the witness stand in his own behalf. It satisfactorily appears, without conflict, that he was the business agent of the labor organization mentioned in the complaint, and that it was a part of his duties "to solicit members" therefor; that he was not paid a separate fee or commission for such solicitations, but was paid a stipulated salary for the performance of all of his duties, including the soliciting of memberships in the organization; that he did solicit in the city of Redding, on March 10, 1942, at least one man by the name of Shaw, to join his labor organization, without securing a license as required by the ordinance in question, and that, upon request by an officer of that city, he refused to apply for a license, stating that he did so on advice of his attorney.

The ordinance reads in part:

### "ORDINANCE NO. 251

"AN ORDINANCE REQUIRING ANY PERSON SOLICITING MEMBERSHIP IN ANY ORGANIZATION FOR COMPENSATION TO OBTAIN A LICENSE THEREFOR, AND FORBIDDING THE USE OF CORRUPT MEANS IN SUCH SOLICITATION IN THE CITY OF REDDING.

"The people of the City of Redding do ordain as follows, to-wit:

"Section 1. It shall be unlawful for any person, firm or corporation, whether as principal, clerk, servant, agent, or employee, inside of the city limits of the City of Redding, by force, violence, menaces, threat, intimidation, coercion or corrupt means, either directly or indirectly, to seek, solicit, induce, or attempt to seek, solicit or induce, any person to join or take membership in any organization, or by force, violence, threat, intimidation, coercion or corrupt means, either directly or indirectly, to seek, solicit or induce, or attempt to seek, solicit or induce, any employer or other person to compel or induce any employee or any other person to join or take membership in any organization.

"Section 2. It shall be unlawful for any person, inside of the city limits of the City of Redding, to solicit or obtain membership for compensation in any organization which requires the payment of dues by such members without first having procured a license so to do, as in this ordinance provided. . . .

"Section 4. Any person desiring a license to engage in or carry on the work of soliciting membership as herein provided shall make application in writing to said City Council upon such forms as may be provided by said City Council, a copy of which shall at all times be attached to said license. . . .

"Section 6. Upon said hearing the said City Council shall receive evidence and determine whether said applicant is of good moral character, and is likely to use force, violence, threats, menace, coercion, intimidation or corrupt means in his proposed work of solicitation. If the City Council is satisfied that said applicant is of good moral character and will not resort to force, violence, threat, menace, coercion, intimidation or corrupt means in his proposed work of solicitation, it shall direct the issuance of a license to said applicant for said purpose of solicitation upon payment of the license fee herein provided for.

"Section 7. Each person to whom a license is issued hereunder shall pay to the City of Redding for each period of three months a license fee in the sum of $5.00.

"Section 8. Any license to be issued hereunder shall be issued by the Chief of Police of said City of Redding, upon payment to him in advance of the license fee hereinabove set forth. All money received in payment of said license fee shall be paid into the General Fund of the City of Redding by the Chief of Police."

The constitutionality of a city ordinance may be properly challenged and determined by means of habeas corpus. (*In re Bell*, 19 Cal.2d 488 [122 P.2d 22]; *In re Vitalie*, 117 Cal.App. 553 [4 P.2d 171]; 13 Cal.Jur. 225, sec. 8.) The office of the writ of habeas corpus is confined to the question of the jurisdiction of the court or officer to render the judgment or order by means of which the petitioner is restrained of his liberty. When the jurisdiction of a court depends on adjudicated facts, the determination of the court in that regard is ordinarily conclusive on the hearing of a writ of habeas corpus. The writ is not designed to serve the purpose of an appeal or to retry issues of fact. (*In re Connor*,

16 Cal.2d 701, 705 [108 P.2d 10]; 13 Cal.Jur. 223, sec. 7.)
Pursuant to that well established rule, this court may not
determine on this proceeding whether the evidence adequately
shows that the petitioner was engaged in soliciting within the
city of Redding, memberships in his labor organization, as a
business, without a license to do so. As the Supreme Court
says in the Connor case, *supra,* with respect to an alleged
failure of the trial court to inform the defendant of his right
to be represented by counsel:

"This contention cannot at this late date be made the basis
of a successful collateral attack by *habeas corpus* upon the
validity of the judgment. The point could have been urged
by petitioner on an appeal from the judgment, but none was
taken. . . . It is not a good ground for discharge in this pro-
ceeding. In this state a defendant is not permitted to try out
his contentions piecemeal by successive proceedings attacking
the validity of the judgment against him. (*In re Drew,* 188
Cal. 717 [207 P. 249]; *In re Connor, supra.*) Neither may
the writ of *habeas corpus* be employed to serve the purposes
of an appeal. (*In re Leonardino,* 9 Cal.App. 690 [100 P.
708].) The function of the writ, as described in the case last
cited, 'is to determine the legality of one's detention by an
inquiry into the question of jurisdiction and the validity of
the process upon its face, and whether anything has trans-
pired since it was issued to render it invalid. It is not desig-
nated to retry issues of fact or to answer the purpose of an
appeal.' "

We must therefore assume that if the ordinance is a valid
exercise either of the police power of the city of Redding to
regulate reasonably a specified business within its limits, in
the interest of peace, health or general welfare of its citizens,
or of the power to license such business for the purpose of
revenue, and that it is not discriminatory in its application,
the writ should be denied. We may not be permitted, on this
proceeding, to weigh the evidence adduced at the trial to de-
termine whether the court erred in determining that the peti-
tioner was engaged in the *business* of soliciting memberships,
as distinguished from a single effort, since it does appear that
business was a part of his duties and that he did actually
solicit at least one member without a license.

Redding is a city of the sixth class. Section 764, subdivi-
sion 10, of the Municipal Corporations Act of California
(Stats. 1927, p. 503; 2 Deering's Gen. Laws of 1937, p. 2513,
Act 5233) provides that:

"The board of trustees of such city shall have power: . . .

"10. To license, for purposes of *regulation and revenue,* all and every kind of business, including the sale of intoxicating liquors, authorized by law and transacted or carried on in such city, . . . to fix the rates of licenses upon the same, and to provide for the collection of the same by suit or otherwise."

The ordinance appears to be a valid and uniform exercise of the police power of the city to reasonably regulate by means of licensing all persons who engage in the business of soliciting for compensation within the city limits, memberships in all organizations which require the payment of dues. It was enacted in the interest of peace, the general welfare and for the purpose of raising revenue. It was evidently intended to protect the citizens against dishonest and unreliable solicitors, and from the annoyance, detriment and injury resulting from the use of force, violence or coercion in securing members of organizations. The ordinance authorizes the city council to issue such licenses upon a showing of "good moral character" on the part of applicants, and upon a showing that they are not "likely to use force, violence, threats, menace, coercion, intimidation or corrupt means" of procuring members. A license fee of $5 per quarter is required to be paid by each solicitor.

The ordinance does not *prohibit* the soliciting of memberships in any organization. It merely requires the procuring of a license, under reasonable specified circumstances, as a prerequisite to engaging in that pursuit. It is uniform in its application to all organizations requiring the payment of dues. The reasonableness of the amount of the license tax is conceded. Nor is the requirement to establish "good moral character" of the applicants challenged. The good moral character of the petitioner is acknowledged. The question as to whether he was eligible to receive a license is not involved in this proceeding. He deliberately solicited at least one membership in his labor organization without a license. It was a part of his business to solicit memberships. He refused to apply for a license on the advice of his attorney. He assumed that the ordinance was void, and that he did not require a license. The only excuse which the petitioner offers for violating the ordinance is that it is unconstitutional and void. Evidently the petitioner deliberately solicited memberships in his organization without a license to test the validity of the ordinance.

■    The business of soliciting memberships in organizations for pay, as well as the business of soliciting sales of goods, is commercial in its nature, and therefore susceptible of valid uniform regulations under the police power. (*Riley* v. *Chambers,* 181 Cal. 589 [185 P. 855, 8 A.L.R. 418]; 16 Cal.Jur. 206, sec. 14; 37 C.J. 214, secs. 69, 70.)

■    The Redding ordinance appears on its face to be a valid police regulation of the business of soliciting for compensation memberships in organizations which require the payment of dues. (Art. XI, sec. 11, Const. of·Cal.; *Town of Green River* v. *Fuller Brush Co.,* 65 F.2d 112 [88 A.L.R. 177]; *Ex parte Haskell,* 112 Cal. 412 [44 P. 725 32 L.R.A. 527]; *E. A. Hoffman Candy Co.* v. *City of Newport Beach,* 120 Cal.App. 525 [8 P.2d 235]; *In re Hartmann,* 25 Cal.App. 2d 55, 60 [76 P.2d 709].) In the Green River case, *supra,* an ordinance prohibiting peddlers from vending or soliciting sales of merchandise within that city was held to be a valid exercise of police powers. The court said:

"It has been uniformly held that while legislative authority may not arbitrarily interfere with private affairs by imposing unusual and unnecessary restrictions upon a lawful business, yet a considerable latitude of discretion must be accorded to the law making power, and if the regulation operates uniformly upon all persons similarly situated and it is not shown that it is clearly unreasonable and arbitrary, it cannot be judicially declared to be in contravention of constitutional right."

Many federal authorities are cited in support of the preceding quotation.

■    The right to determine the necessity for local legislation regulating businesses of specified classes under the police power rests with the legislative authority. On habeas corpus, a court may not interfere with that determination in the absence of a clear showing to the contrary. The court says in the Green River case, *supra,* in that regard, quoting from *Schmidinger* v. *Chicago,* 226 U.S. 578 [33 S.Ct. 182, 57 L.Ed. 364]:

" 'This court has frequently affirmed that the local authorities intrusted with the regulation of such matters, *and not the courts,* are primarily the judges of the necessities of local situations calling for such legislation, and the courts may only interfere with laws or ordinances passed in pursuance of the police power where they are so arbitrary as to be palpably

and unmistakably in excess of any reasonable exercise of the authority conferred.' "

In the present case the ordinance appears to be fair and impartial in its application, and we must assume the local situation reasonably justified the necessity for the regulatory ordinance in question. It was an initiative ordinance adopted at the instance of electors of the city of Redding, which shows some public demand for the regulation to protect the inhabitants against unreliable solicitors.

It is true that a single transaction or the soliciting of but one individual to become a member of an organization does not necessarily constitute a business. (*In re Smith,* 33 Cal.App. 161 [164 P. 618]; *Merced County* v. *Helm & Nolan,* 102 Cal. 159 [36 P. 399]; 16 Cal.Jur. 193, sec. 6.) But in the present case it sufficiently appears that the petitioner was regularly employed as agent of the labor union upon a fixed salary, and that a part of his duties was to solicit memberships in the organization. It was therefore a part of his business to solicit members. He was charged and convicted of violating the ordinance in pursuance of that business.

The ordinance makes it unlawful for any person within the city of Redding to solicit members "for compensation" in any organization which requires "the payment of dues." The language of the ordinance covers any person who solicits for pay members in such an organization, whether he is compensated with a stipulated sum for each member secured, or is paid a salary for services, including his duty to solicit members. Either method of payment constitutes compensation for the services, and falls within the inhibition of the ordinance.

The evidence in this case shows that it was a part of the duties of the petitioner to solicit members. He was paid a stipulated salary for his services, which included the duty of soliciting members. It is true that his salary was due *regardless of whether he was successful* in securing new members. But his duties did require him *to solicit* for members. The evidence shows the following testimony in that regard: "Q. That salary was the same whether he *got* any members or not? A. I believe that's correct. Q. But that *part of his duties was to solicit members* from time to time? That was part of his work? A. Yes, sir." It thus appears the petitioner's

salary did not depend on his success in securing members, but it did depend on his efforts at least to seek for members.

■■■ The ordinance is not invalid because it confers upon the council unrestricted authority arbitrarily to grant or deny licenses. It provides for hearings by the council to determine the fitness of applicants for licenses to solicit for memberships in organizations. The standard of qualifications is prescribed. The applicants are required to furnish evidence of their good moral character, and that they are not likely to resort to force, violence, coercion, etc., in soliciting for memberships. In the absence of evidence to the contrary, it may not be presumed the councilmen will act arbitrarily, oppressively or unfairly in granting or refusing to grant licenses. If in fact the council does abuse its discretion in that regard the applicant has his remedy against the members of the board. In California the presumption that licensing boards or officers will act fairly and impartially in the performance of their lawful duty is in accordance with the federal rule in that regard. ■■■ A grant of authority to a municipality carries with it the presumption that the council will perform its duty lawfully without discrimination. (*People v. Globe Grain & Milling Co.*, 211 Cal. 121, 126 [294 P. 3]; *In re Flaherty*, 105 Cal. 558, 562 [38 P. 981, 27 L.R.A. 529]; *People ex rel. Doyle v. Atwell*, 232 N.Y. 96 [133 N.E. 364, 25 A.L.R. 107]; 16 Cal.Jur. 213, sec. 19; 37 Am.Jur. 782, sec. 161; 19 Cal.L.Rev. p. 448.) In the Doyle case, *supra*, Mr. Justice Pound says:

"This court has casually said in *People ex rel. Nechamcus v. Warden*, 144 N.Y. 529, 27 L.R.A. 718, 39 N.E. 686, 689: 'Nor is the constitutionality of an act to be determined by the manner in which its provisions may be carried out by those upon whom devolved the duty of acting as examiners [of applicants for plumbers' licenses]. If they act unfairly or oppressively, as alleged by the relator in the petition, that is conduct which may call for a remedy against the persons who compose the board; but it does not furnish ground for assailing the validity of the statute.' "

In the Globe Grain & Milling Co., case, *supra*, it is said, at page 126 thereof:

"The essential requirement of due process is merely that the administrative officer or body be required to determine the existence or nonexistence of the necessary facts before

any decision is made. If the statute requires this, it does not vest an uncontrolled discretion, and the officer or body may not act arbitrarily. (*Riley* v. *Chambers,* 181 Cal. 589 [8 A.L.R. 418, 185 P. 855]; *Doble Steam Motors Corp.* v. *Daugherty,* 195 Cal. 158 [232 P. 140]; *Ex parte McManus,* 151 Cal. 331 [90 P. 702].)''

To the same effect it is stated in the excellent note upon that subject found in 19 California Law Review, at page 449:

''The California case under discussion fortifies previous holdings in this state, and is in accord with the federal rule, that a grant of authority carries the implication that it will be exercised reasonably, fairly, and lawfully, See *People ex rel. Liebermann* v. *Van De Carr* (1905), 199 U.S. 552, 26 Sup.Ct. 144 [50 L.Ed. 305]; *Monongahela Bridge Co.* v. *United States,* 216 U.S. 177, 30 Sup.Ct. 356 [54 L.Ed. 435]; *Hall* v. *Geiger-Jones Co.* (1916), 242 U.S. 539, 37 Sup.Ct. 217 [61 L.Ed. 480]; *Ex parte McManus* (1907), 151 Cal. 331, 90 P. 702. The court expressly declares that 'the statute will be construed together with the constitutional provisions against discrimination.' 80 Cal.Dec. at 628 [211 Cal. 121], 294 P. at 5.

''. . . But in jurisdictions like California, where such enactments are upheld through reading in constitutional limitations, a complainant may only have relief under the statute by proving discriminatory action against himself. In the instant case, the plaintiff set up no facts proving discrimination, but alleged that since the statute on its face did not preclude unfair action, it was invalid. The court asserts that the remedy for a person injured, in view of the validity of the act, consists in an application for a review of particular orders or rules of the commission, to determine whether the administrative agency is acting in excess of the powers delegated to it. . . .

''. . . The case seems rather to be decided upon the sensible theory that administrative officers granted wide powers are sufficiently limited by reading into their authority constitutional limitations, and that in proper cases an adequate remedy against their misuse of discretion is provided by a review of their orders and rules.''

In this case the petitioner refused to apply for a license to solicit memberships. The members of the council were not asked to pass upon his qualifications for a license.

Under the preceding authorities, in the absence of evidence of an abuse of discretion, it will not be presumed the ordinance is void merely because the statutory authority to enact ordinances for "regulation and revenue" does not prescribe limitations of discretion on the part of the council.

The petitioner claims on the asserted authority of *In re Bell,* 19 Cal.2d 488 [122 P.2d 22], that the ordinance is uncertain because it seeks to prohibit the soliciting of members by the exercise of "force, violence, menace, threat, intimidation, coercion or corrupt means" since it may be lawful to resort to compulsion, coercion, intimidation or threat to secure members, provided such means amount only to "economic, moral or social pressure." That is a strained construction of the language. The fair import of the language employed is to prohibit the securing of members of any organization included in the ordinance *against the will of a person* solicited, induced by means of physical violence, threat, menace, coercion, intimidation or fraud, whether they are economic, moral, social or any other type of compulsion. None of those terms fairly comes within the scope of legitimate persuasion. (*Lisse* v. *Local Union No. 31,* 2 Cal.2d 312, 317 [41 P.2d 314].) They all savor of unfair and unwarranted means of forcing one to join an organization against his will. The application of petitioner's construction would result in depriving one of his inalienable right to determine for himself what association, group or organization he wished to join. The use of force to procure members would seem to fall within the totalitarian methods so scathingly denounced by the petitioner. We think the language is not reasonably susceptible of the distinction urged by petitioner.

In support of his contention that the Redding ordinance violates the constitutional guarantee of freedom of speech, the petitioner relies on the following cases: *In re Campbell,* 64 Cal.App. 300 [221 P. 952]; *Murdock* v. *Pennsylvania,* 319 U.S. 105 [63 S.Ct. 870, 891, 87 L.Ed. 1292, 146 A.L.R. 81]; *Schneider* v. *Irvington,* 308 U.S. 147 [60 S.Ct. 146, 84 L.Ed. 155]; *Thornhill* v. *State of Alabama,* 310 U.S. 88 [60 S.Ct. 736, 84 L.Ed. 1093]; *Hague* v. *Committee for Industrial Organization,* 307 U.S. 496 [59 S.Ct. 954, 83 L.Ed. 1423]; *De Jonge* v. *Oregon,* 299 U.S. 353 [57 S.Ct. 255, 81 L.Ed. 278]; *Herndon* v. *Lowry,* 301 U.S. 242 [57 S.Ct. 732, 81 L.Ed. 1066]; *Near* v. *Minnesota ex rel. Olson,* 283 U.S.

697 [51 S.Ct. 625, 75 L.Ed. 1357]; *Yick Wo* v. *Hopkins*, 118 U.S. 356 [6 S.Ct. 1064, 30 L.Ed. 220]; *Pittman* v. *Nix*, —— Fla. —— [11 So.2d 791, 144 A.L.R. 1341].

None of the foregoing cases is authority for holding that the Redding ordinance is unconstitutional and void for the reason that it is discriminatory or oppressive or because it violates the constitutional guarantee of freedom of speech. Those cases involved statutes or ordinances absolutely prohibiting the distribution of handbills or pamphlets to disseminate religious or other legitimate views, and absolutely forbidding the organization of labor unions. Some of them involved participation in public meetings held under the auspices of the Communist Party, regardless of unlawful utterances or conduct in opposition to organized government, or clear discriminations of either the ordinances or their enforcement against such businesses as laundries. Several of those cases clearly distinguish between statutes or ordinances adopted under the police power to regulate businesses or to secure revenue and those which are clearly intended actually to prohibit lawful businesses or pursuits. Several of those cases specifically recognize the right to regulate by license such enterprises as soliciting for compensation subscriptions to newspapers, magazines or books, since that occupation is deemed to be commercial in its nature. None of the foregoing cases cited by the petitioner involved the licensing of solicitors who engaged in that pursuit for compensation. In that respect the present proceeding is radically different from the cases relied upon by the petitioner. They are therefore not in point.

It would be useless to attempt to analyze in detail each of the numerous cases relied upon by the petitioner. We shall attempt only to point out the chief distinctions in the leading cases. In the Campbell case, a Eureka ordinance which made it unlawful to belong, under any circumstances, to the organization of the Industrial Workers of the World, or to circulate printed propaganda advocating membership therein, regardless of proof of subversive activity or unlawful conduct on its part was held to be discriminatory and void. The court properly said regarding that ordinance, that it was an "invidious discrimination as against a particular organization" without proof of its asserted unlawful tendencies.

In the recent Murdock case, *supra,* it was held on certiorari,

an ordinance of the city of Jeannette, Pennsylvania, which required a license for the distribution of goods or pamphlets regardless of payment therefor was in conflict with the guarantee of freedom of speech, and therefore void. Murdock, as a member of "Jehovah's Witnesses" was convicted of circulating pamphlets advocating the religious beliefs of that sect. The court held that the voluntary payment of small sums of money for the books and pamphlets constituted mere contributions and did not bring the transaction within the class of commercial business; that the requirement to pay a license tax was a mere subterfuge to disguise the attempt to abridge unlawfully the guarantee of freedom of religion. Recognizing the right to regulate the business of selling books, magazines or pamphlets for profit, even when that is done by agents for the benefit of religious organizations, quoting with approval from the case of *Jones* v. *Opelika,* 316 U.S. 584 [62 S.Ct. 1231, 86 L.Ed. 1691, 1702, 141 A.L.R. 514], the court said:

"When a religious sect uses 'ordinary commercial methods of sales of articles, to raise propaganda funds,' it is proper for the state to charge 'reasonable fees for the privilege of canvassing.' "

Four justices of the Supreme Court dissented to the Murdock opinion. There is, however, nothing in that decision in conflict with what we have said regarding the validity of the ordinance in the present case.

In *Schneider* v. *Irvington, supra,* which was combined with three other cases, the United States Supreme Court, in a proceeding in certiorari, held that city ordinances of Los Angeles, Cal., Milwaukee, Wis., Worcester, Mass., and Irvington, New Jersey, which prohibited by the distribution of hand bills on the streets or in the parks of the respective cities, without first procuring permits from the chiefs of police, or the city authorities, were in conflict with the Fourteenth Amendment of the federal Constitution and void as abridgments of the freedom of speech. The court said with respect to one case:

"It [the ordinance] bans unlicensed communication of any views or the advocacy of any cause . . ., and permits canvassing only subject to the power of a police officer to determine, as a censor, *what literature may be distributed* . . . and who may distribute it."

In distinguishing those cases from valid ordinances affect-

ing commercial enterprises, adopted for the purpose of regulation and revenue, the court further said:

"The ordinance is not limited to those who canvass *for private profit;* nor is it merely the common type of ordinance requiring some form of registration or license of hawkers or vendors."

In the Thornhill case an Alabama statute which absolutely prohibited any individual from entering on the premises *or going near to* another person's business property to induce others to refrain from trading with that enterprise, or to picket the works to the detriment of the business was held to be unconstitutional. The court said:

"The group in power . . . may not impose penal sanctions on peaceful and truthful discussion of matters of public interest."

That statute failed to recognize the right of peaceful picketing and private communications to persuade others, without force, violence or coercion, to recognize or accept the doctrine of the right of laboring men to organize for collective bargaining and mutual benefit and lawfully to promulgate their views in that regard. That statute had no application to the regulating of commercial enterprises. It is not in point.

The Hague case, upon which the petitioner in this case strongly relies, held that an ordinance of Jersey City which prohibited the holding of public parades or assembly of persons on the streets, in the parks or in public buildings of that city, without a permit therefor from the Director of Public Safety was unconstitutional and void. On certiorari the United States Supreme Court said with relation to the rights of freedom of speech and of peaceable assemblies that:

"The bill alleges, and the findings sustain the allegation, that the respondents had no other purpose than to inform citizens of Jersey City by speech, and by the written word, respecting matters growing out of national legislation. . . .

". . . It is clear that the right peaceably to assemble and to discuss these topics, and to communicate respecting them, whether orally or in writing, is a privilege inherent in citizenship of the United States which the Amendment protects."

That ordinance gave the Director of Public Safety arbitrary power to grant or refuse, without evidence, permission to hold public meetings or parades. The court said the director was empowered to withhold his permission on the mere assump-

tion, without evidence thereof, that the meetings might result in "riots, disturbances or disorderly assemblage." That ordinance did not purport to regulate commercial business. It fixed no standard of fitness. It merely authorized the director, "after investigation," to arbitrarily refuse permission to hold public parades or public meetings, when "he believes it to be proper." The ordinance declared that it was enacted to prevent "riots and disturbances." That case is not determinative of the invalidity of the Redding ordinance which is involved in this proceeding.

In the cases of Herndon, *supra,* and De Jonge, *supra,* judgments of convictions were reversed, which were secured under statutes of the states of Georgia and Oregon, respectively, making it unlawful for any person to participate in or attend any meeting of the Communist Party, regardless of the purpose of the meetings. In each case it was found that the meetings which were attended by the defendants were conducted in peaceful and orderly manner and that there was no evidence of the purpose or intent thereby to incite insurrection, riots, disturbances or opposition to organized government. It was said that in the absence of evidence to the contrary it must be assumed public meetings are held for lawful purpose, and that the statutes in question prescribed no standards of guilt. Those cases did not involve the regulation or licensing of businesses under the police power or otherwise. They are not in point.

In the Pittman case, an ordinance of the town of Perry, in Florida, was held to be unconstitutional and void. That ordinance made it unlawful "to organize or attempt to organize within the Town any labor union or other labor organization," or for any person to solicit memberships in labor organizations. Clearly that ordinance was discriminatory and void. It did not attempt to regulate businesses or authorize the licensing thereof.

In the Near case, a statute of Minnesota which outlawed and by means of injunction authorized the abatement as a public nuisance of any newspaper, magazine or periodical which published "malicious, scandalous or defamatory" statements regarding public officers was held to be void. Without proof that the editor of the "Saturday Press" intended to repeat the scurrilous publications, and regardless of the truth of the charges, the publication of the newspaper was

suppressed. That injunction was held to be an invasion of the right of the freedom of the press.

In the Yick Wo case an ordinance of the city of San Francisco, which prohibited the maintaining of a laundry without the consent of the board of supervisors, "except the same be located in a building *constructed either of brick or stone*" was held to be discriminatory and void. The court said:

"No reason whatever, except the will of the supervisors, is assigned why they [the petitioners] should not be permitted to carry on, in the accustomed manner, their harmless and useful occupation, on which they depend for a livelihood. And while this consent of the supervisors is withheld from them and from two hundred others who have also petitioned, all of whom happen to be Chinese subjects, eighty others, not Chinese subjects, are permitted to carry on the same business *under similar conditions*. The fact of this discrimination is admitted. No reason for it is shown."

From the record in that case it is quite evident that, in the guise of regulation of a business for pretended protection against fire hazard, clear discriminations against discredited Chinese laundrymen were continuously practiced. No such showing is made in the present proceeding.

The other cases relied upon by the petitioner may be likewise distinguished from the facts of the present proceeding. No similar case is cited, and we have been unable to find one which holds that an ordinance adopted under police power which requires a license based on a showing, after hearing, of reasonable qualifications, to engage in a commercial business of soliciting for compensation, either the sale of goods or magazines or the securing of memberships in organizations requiring the payment of dues is unconstitutional and void. There appears to be no valid distinction between the conducting of the business of canvassing for subscriptions for magazines and books, or merchandise, and soliciting for memberships in organizations, provided those pursuits are engaged in for personal profit. The present ordinance appears to be a reasonable and uniform method of attempting to regulate by license a business affecting all organizations of a specified class. There is nothing in the ordinance which appears to be discriminatory, or to indicate that it is aimed toward labor unions alone. It may not reasonably be said from either the language of the ordinance or from the evidence of its enforce-

ment, that it was adopted as a subterfuge to conceal a secret purpose to discriminate against labor unions. The ordinance will not bear that construction.

▆ The applicant for a license is required to furnish evidence of good moral character. Certainly that is reasonable and valid. Numerous cases so hold. (*Fernel* v. *Board of Medical Examiners,* 91 Cal.App. 712 [267 P. 561]; *Riley* v. *Chambers,* 181 Cal. 589, 594 [185 P. 855, 8 A.L.R. 418]; 37 C.J. 239, sec. 93.) The applicant is also required to furnish evidence that he is not likely to resort to force, violence or coercion in soliciting memberships. We observe slight distinction between those qualifications. Both refer to the character of a man. Good moral character is indicative of honesty and reliability. The tendency of one to resort to force, violence or coercion in soliciting sales of goods or memberships in organizations, indicates that he may be lawless, tyrannical and dangerous. Those traits may be refuted by evidence of general reputation as a peaceable, trustworthy man. ▆ If it be assumed that the latter qualification with relation to the use of force, violence or coercion be deemed to be unreasonable and uncertain because it involves speculation as to what one might do in the future, which conclusion we think is not warranted, then the provision of the ordinance with respect to the showing regarding the use of force, violence or coercion, may be eliminated. The balance of the ordinance, including sections 2, 4 and 7, under which the petitioner was convicted, may still stand as valid. The ordinance contains a saving clause.

▆ Every presumption is in favor of the validity of the ordinance. It is a well settled general rule that where an ordinance or a statute is adopted with relation to a matter which is within the legislative power to enact, all presumptions are in favor of its validity, constitutionality and reasonableness. (*People* v. *Globe Grain & Milling Co., supra; Ex parte Haskell,* 112 Cal. 412 [44 P. 725, 32 L.R.A. 527]; 16 C.J.S. 234, sec. 98.) In the authority last cited it is said:

"It is a cardinal rule of construction that when reasonably possible, a statute must be so construed as to uphold its validity, and not so construed as to endanger its validity, either in whole or in part. Indeed, a statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts on that score. In

other words, in testing the constitutionality of a statute, the language must receive such construction as will conform it to any constitutional limitation or requirement, if it is susceptible of such interpretation; and the statute and constitutional provisions must be read together and so harmonized as to give effect to both when this can be consistently done. If a statute is susceptible of two constructions, one of which will render it constitutional and the other of which will render it unconstitutional in whole or in part, or raise grave and doubtful constitutional questions, the court will adopt that construction which, without doing violence to fair meaning of language, will render it valid, in its entirety, or free it from doubt as to its constitutionality, even though the other construction is equally reasonable, or seems the more obvious, natural, and preferable, interpretation.''

A multitude of authorities support the foregoing text. That presumption applies to both statutes and ordinances. Pursuant to that rule there is no difficulty in determining from the initiative ordinance in this case that it was adopted for revenue and to regulate the business of soliciting memberships in all organizations of a designated class and to protect the inhabitants of the city of Redding against dishonest, fraudulent and oppressive means of solicitation.

But, as hereinbefore pointed out, petitioner may not complain of the possibility of arbitrary or discriminatory conduct on the part of the council in passing upon applications for licenses or that it might deny such applications on the ground that the applicant was likely to resort to force, violence, etc., in his proposed work of solicitation, and thereby deny to him some right guaranteed by the Constitution, since petitioner made no application for a license and gave the council no opportunity to determine his qualifications. Also, he is not charged with violating section 1 of the ordinance which makes it unlawful to solicit memberships by force, violence, etc. The charge against him is that he violated section 2 thereof in that he solicited membership for compensation in an organization which requires the payment of dues by such members, without having first procured a license so to do. If that section of the ordinance is valid, which we hold that it is, petitioner's conviction must be upheld.

The writ is discharged.

Adams, P. J., concurred.

PEEK, J., I dissent.—At the outset I cannot agree with the majority opinion that the activities of petitioner were such as to constitute him a solicitor of memberships "for compensation" under the provisions of said act.

The only evidence in this regard is that of the tax collector of the city of Redding, who testified that petitioner stated to him that his salary would be the same whether he obtained any members or not; that part of his duties were to solicit members but that nothing was said about petitioner being paid for such solicitation. Counsel for respondent testified that petitioner informed him he received a salary for all the services he performed; that a part of his duties was to solicit memberships for his organization; that he made no mention of being paid a fee or special compensation for such solicitation, and that his salary included all of his activities. The trial court in summation of such testimony stated it understood that the salary paid to petitioner would go on whether he obtained members or not. Section VI of the by-laws of the organization relating to the duties of the business manager thereof, and quoted by petitioner in his brief, makes no mention of the solicitation of members as a part of his duties or of compensation to be paid him for such solicitation.

If the construction placed upon the words "solicit or obtain membership for compensation" by virtue of the judgment of the trial court were to be followed, then any individual within the limits of the city of Redding who received any compensation from any organization which collected dues, and who might solicit a single membership in such organization, would be guilty of a crime under the ordinance in question. It is difficult to understand how such could have been the intent of the ordinance. The wording, in my opinion, does not lend itself to such interpretation.

The interpretation placed upon the ordinance by the city prior to the charge against petitioner, which, as testified to by the tax collector, was that during the four years subsequent to the adoption of the ordinance only one license fee was collected, and that was from an individual who admittedly received his entire livelihood from a percentage of the monies collected for memberships sold in a particular organization. From such testimony it would appear that it was the original intent of the city to prevent racketeering in the solicitation of memberships by one who existed solely by his wits in the sale of fraudulent memberships, that prompted the ordinance.

By reason of the conflicting interpretations given to the ordinance, particularly the word "compensation" and to which it is obviously susceptible, an objection upon the ground of uncertainty might well be made. However, petitioner's contention in this regard appears to be directed to the uncertainty existing between section 1, which prohibits any solicitation in any organization by certain means, and the prohibition in section 2 prohibiting solicitation "for compensation" in any organization which collects dues. These sections would not seem to be irreconcilable. "An ordinance of a regulatory nature must be clear, certain and definite, so that the average man may with due care after reading the same understand whether he will incur a penalty for his actions or not. Otherwise it is void for uncertainty." (19 R.C.L. 810.) But it cannot be nullified upon the ground of uncertainty if susceptible of any reasonable construction.

The petitioner, in addition to contending that the ordinance in question is uncertain, as previously mentioned, also contends that it is incapable of enforcement without abridging constitutional rights and is in violation of the Bill of Rights.

Respondent's brief argues (1) that it is a matter of "common knowledge to everyone that in the past, there have been fraudulent solicitations, as well as solicitations by intimidation, threats, force and violence," (2) that "the public interest is involved in solicitation of members in organizations, particularly labor unions, where fraud, force, violence, menace, threats, etc., are used," and (3) that "the real test of an ordinance of the nature of the one involved is whether or not the subject matter is a valid exercise of the police power. In other words, the question to be answered is whether soliciting memberships in an organization for compensation may cause injury to the public health, comfort, morals or general welfare."

If counsel for respondent in so commenting is stating the reasons which impelled the city of Redding to enact the ordinance, then the first and third contentions made, properly would come within the general rule that local authorities are the sole judges of the necessities of local situations calling for such legislation, and that the courts may not determine the question of the necessity of legislation so adopted. Undoubtedly, respondent does not seriously urge its second contention, for obviously to do so is to urge the validity of the or-

540

dinance upon the ground of class legislation and thereby insure its invalidity.

That an ordinance is a valid exercise of the police power is a general statement which must be qualified by the facts of a given case, bearing in mind the statement of the United States Supreme Court in the case of *Thornhill* v. *Alabama,* 310 U.S. 88 [60 S.Ct. 736, 84 L.Ed. 1093], that a penal statute which "does not aim specifically at evils within the allowable area of State control, but on the contrary, sweeps within its ambit other activities that in ordinary circumstances constitute an exercise of freedom of speech or of the press . . . lends itself to harsh and discriminatory enforcement by local prosecuting officials . . .," and "results in a continuous and pervasive restraint on all freedom of discussion that might reasonably be regarded as within its purview."

Therefore the first test of the constitutionality of such ordinance is whether or not it prohibits acts proper within themselves. If such is the ultimate result, then the act must fall, even though other acts contained therein properly may be made illegal. "Language prohibiting conduct that may be prohibited and conduct that may not affords no reasonably ascertainable standard of guilt and is therefore too uncertain and vague to be enforced. (*Stromberg* v. *California,* 283 U.S. 359 [51 S.C. 532, 75 L.Ed. 1117]; *Herndon* v. *Lowry,* 301 U.S. 242, 261-263 [57 S.Ct. 732, 81 L.Ed. 1066]; *Lanzetta* v. *New Jersey,* 306 U.S. 451 [59 S.Ct. 618, 83 L.Ed. 888]; *De Jonge* v. *Oregon,* 299 U.S. 353 [57 S.Ct. 255, 81 L.Ed. 278]; *Hague* v. *C.I.O.* [307 U.S. 496 (59 S.Ct. 954, 83 L.Ed. 1423)]; *Schneider* v. *State,* [308 U.S. 147 (60 S.Ct. 146, 84 L.Ed. 155)]; *In re Harder,* 9 Cal.App.2d 153 [49 P.2d 304].) A conviction based upon such a statute cannot stand even though the acts of misconduct in the particular case could be validly prohibited by properly drafted legislation. (*Thornhill* v. *Alabama, supra; Carlson* v. *California,* [310 U.S. 106 (60 S.Ct. 746, 84 L.Ed. 1104)].)" (*In re Bell,* 19 Cal.2d 488 [122 P.2d 22].)

Secondly, I disagree with the majority opinion in its construction of the language, "that to some extent compulsion, coercion, intimidation or threat are employed does not detract from its peaceful nature so long as they constitute only economic, moral, or social pressure and not the pressure of violence" as used in the case of *In re Bell, supra,* to mean that

anything which is "against the will of a person solicited" whether by physical violence or by "economic, moral, social, or any other type of compulsion" savors of "unfair and unwarranted means" to force one to join an organization against his will, and therefore does not come "within the scope of legitimate persuasion."

It would thereby appear from the wording of the majority opinion that it turns, in a degree at least, upon the assumption that mere solicitation by threat, menace, coercion, or fraud, carries with it a threat of physical violence.

The ordinance in question in the Bell case states in section 3 thereof, that "it is unlawful for any persons to beset or picket the premises of another . . . for the purpose of inducing [an] employee or person seeking employment, by means of compulsion, coercion, intimidation, threats, acts of violence, or fear to quit his or her employment or to refrain from seeking or freely entering into employment." The words used in section 1 of the Redding ordinance are, "it shall be unlawful . . . by force, violence, menace, threat, intimidation, coercion or corrupt means . . . to solicit any person . . . to take membership in any organization." Section 6 also uses comparable language— ". . . force, violence, threat, menace, coercion, intimidation or corrupt means in . . . solicitation." Wherein is the distinction between the words used in the two acts? The Supreme Court, in the Bell case, further stated that upon such words must be superimposed the question of kind, and as illustrative thereof said: "A picket may point to the possibility of ousting from the union any employee crossing the picket line and thereby compel or coerce him to quit his employment," and as such compulsion could therefore be moral or economic and not necessarily physical violence, held the section in the Yuba ordinance to be invalid.

In my opinion the wording of the present ordinance falls directly within the rule laid down in the Bell case. The sweeping prohibitions contained in sections 1 and 6 thereof, even though containing acts which the city of Redding might validly prohibit, also contain acts which could not be prohibited, and therefore the section is invalid. It cannot be doubted that in every day life there may be many instances where one is compelled to do or accept certain things against his will. For instance, when a local merchant, operating his

individual store, sells to a large chain after the proposition has been made to him that he should sell. He knows full well that if he refuses he must take the inevitable consequences of financially disastrous competition, and if he so heeds either the direct or implied economic threat and sells, can it then be said that he has not done so against his will and by virtue of economic compulsion and threat? Is that not a present adaption of the situation described by Justice Holmes in his dissenting opinion in 1896, in the case of *Vegelahn* v. *Guntner*, 167 Mass. 92 [44 N.E. 1077, 57 Am.St.Rep. 443, 35 L.R.A. 722], when speaking of the competition between two merchants, one long established, one newly arrived, in a town too small to support more than one, said:

"The only debatable ground is the nature of the means by which such damage may be inflicted. We all agree that it cannot be done by force or threats of force. We all agree, I presume, that it may be done by persuasion to leave a rival's shop, and come to the defendant's. It may be done by the refusal or withdrawal of various pecuniary advantages which, apart from this consequence, are within the defendant's lawful control. It may be done by the withdrawal of, or threat to withdraw, such advantages from third persons who have a right to deal or not to deal with the plaintiff, as a means of inducing them not to deal with him either as customers or servants . . . I pause here to remark that the word 'threats' often is used as if, when it appeared that threats had been made, it appeared that unlawful conduct had begun. But it depends on what you threaten. As a general rule, even if subject to some exceptions, what you may do in a certain event you may threaten to do—that is, give warning of your intention to do—in that event, and thus allow the other person the chance of avoiding the consequences. So, as to 'compulsion' it depends on how you compel. . . . So as to 'annoyance' or 'intimidation.' . . ."

The majority opinion, in holding that an act of compulsion, intimidation or threat, though only moral, economic or social, to induce a person to become a member of an organization may be prohibited under the police power of the city by virtue of the fact that such intimidation would be against the will of the person solicited is, therefore, in my opinion, directly contra to the rule as laid down in the Bell case and all of the more recent decisions, not only of the courts of this state but also the federal courts as well. (See

*McKay* v. *Retail Automobile Salesmen's Local Union No. 1067,* 16 Cal.2d 311 [106 P.2d 373]; *J. F. Parkinson Co.* v. *Building Trades Council,* 154 Cal. 581 [98 P. 1027, 16 Ann. Cas. 1165, 21 L.R.A.N.S. 550]; *Lisse* v. *Local Union No. 31,* 2 Cal.2d 312 [41 P.2d 314]; *Pierce* v. *Stablemen's Union,* 156 Cal. 70 [103 P. 324].)

The majority opinion does not explicitly determine that the business to be regulated by the ordinance in question is so inherently harmful to the general welfare of the community that the administration thereunder may be lodged in the reasonable discretion of the council. Rather it impliedly decides the case upon the ground that the business to be regulated is a lawful exercise of the police power of the city of Redding in the interest of the general welfare, and that a reasonable standard of qualifications has been set. Such interpretation would appear to be a valid inference by virtue of the citation of the case of *Fernel* v. *State Board of Medical Examiners,* 91 Cal.App. 712 [267 P. 561].

If I be correct in my understanding of the conclusion reached by the majority it can be rationalized only by a determination of but one issue, and that is (1) that as the business of soliciting memberships for compensation, whether directly or indirectly, for a chamber of commerce, a luncheon club, a fraternal organization, a labor union, or any other organization which requires the payment of dues by its members, is a lawful occupation and is not inherently harmful to the morals, health or general welfare of the city, and that the provision relating to the necessity for the showing of good moral character on the part of the applicant that he is one who would not likely resort to force, violence, threats, menace, coercion, intimidation or corrupt means, is a proper standard of rules or regulation for guidance by the council, and also as information to a prospective applicant of the qualifications he must show in order to obtain a license.

In the Fernel case the petitioner claimed that the act in question (Medical Practice Act) did not authorize the medical board to decline to grant a certificate because it was not convinced that the applicant was possessed of good moral character, and, in addition, that the board had no jurisdiction to consider such subject. All that the court held therein was that the requirement contained in section 9 of said act, to wit: "every applicant must file with the Board . . . satis-

factory testimonials of good moral character,'' was a reasonable condition precedent to the taking of an examination for a license. Further reading of that act discloses that in addition to the above requirement the act also provided for a complete standard of objective qualifications which an applicant had to meet before he could obtain a license to practice medicine in this state. Such case is, therefore, authority only for the one proposition, i.e., a showing of good moral character is a valid prerequisite to the granting of a license to practice medicine in the State of California.

Under the principle enunciated in the Fernel case it cannot be said that proof of good moral character is not a reasonable condition precedent to the granting of a license in so far as the practice of the healing arts are concerned. A similar provision in the present ordinance is, therefore, undoubtedly valid. But to hold that a showing of good moral character is a valid requirement, is not to say, as in effect does the majority opinion, in following the argument of respondent, that the additional words, ''if the council is satisfied that said applicant . . . will not resort to force, violence, threat, menace, coercion, intimidation or corrupt means,'' does not add to such requirement of good moral character in that there is only a ''slight distinction'' between the acts attempted to be prohibited by the ordinance and the requirement of good moral character. From such observation the majority then concludes that a sufficient ''standard of qualifications is prescribed.''

My third objection is directed at the last quoted statement.

What facts could be held to be sufficient to prove to the *satisfaction* of the council that one of good moral character to-day would not commit one of the acts mentioned in the future, and if the council was not *satisfied* with the evidence so submitted, what additional facts might be produced to *satisfy* the council? In other words, what might be satisfaction to one might be utter dissatisfaction to another. One test might be applied to one applicant and a different one to another.

In the case of *Hewitt* v. *State Board of Medical Examiners*, 148 Cal. 590 [84 P. 39, 113 Am.St.Rep. 315, 7 Ann.Cas. 750, 3 L.R.A. N.S. 896], the court, in holding a provision of chapter 51, Statutes of 1901, void, stated: ''As the provision of the act in question does not define what shall constitute 'grossly improbable statements,' but leaves it to be determined

according to the opinions of the particular members of the board who happen to constitute it . . . it is obvious, if such a provision can be sustained, that it could operate disastrously not only to individual physicians, but upon physicians of a particular school.''

In a later case, *Matter of Dart*, 172 Cal. 47 [155 P. 63, Ann.Cas. 1917D 1127, L.R.A. 1916D 905], wherein an act not wholly unlike the present one was at issue, the court held unconstitutional an ordinance of the city of Los Angeles, whereby the city council attempted to set up a permit system of charities, and stated: ''Can the municipal authorities of a city arbitrarily say what person or what institution may or my not engage in charitable work dependent wholly or in part upon voluntary contributions from the public? Unhesitatingly we answer that this cannot be done, that it constitutes an attempt to use the police power in an arbitrary, unreasonable, and oppressive manner. It necessarily contains an assertion of the power to prohibit and suppress vocations and occupations. . . . The power to pass reasonable regulations in such a case bears no relationship to the power to prohibit or suppress.'' Mr. Justice Shaw, in his concurring opinion, added the further comment that ''no standard of character or fitness is set by which the commission is to be guided in giving or withholding permits. The only thing required is that the commission shall find that the 'object of said solicitation is worthy and meritorious.' Persons of the highest character, desiring to solicit for a worthy cause, might be refused a permit for no reason except the arbitrary will of the commission. Every person has the right, under our constitution, and perhaps without its guarantee, to solicit contributions for a worthy charitable purpose, provided he acts in good faith and honestly applies them to that purpose. The ordinances give the commission power to deprive persons of that right without cause or reason. To the extent that they give this arbitrary power they are contrary to the constitution and void. They come within the principles stated by the supreme court of the United States in *Yick Wo* v. *Hopkins*, 118 U.S. 356, [30 L.Ed. 220, 6 S.Ct. 1064], and by this court in *Ex parte Sing Lee*, 96 Cal. [354] 359, [31 Am.St.Rep. 218, 24 L.R.A. 195, 31 P. 245], *County of Los Angeles* v. *Hollywood Cemetery Assn.*, 124 Cal. [344] 349, 71 Am.St.Rep. 75, 57 P. 153]; *Schaezlein* v. *Cabaniss*, 135 Cal. [466] 469, [87

Am.St.Rep. 122, 56 L.R.A. 733, 67 P. 755], and *Hewitt* v. *State Board of Medical Examiners,* 148 Cal. [590] 593, [113 Am.St.Rep. 315, 7 Ann.Cas. 750, 3 L.R.A.N.S. 896, 84 P. 39]. . . .

"The proper method of regulating a lawful business is indicated in *Hewitt* v. *State Board of Medical Examiners, supra,* as follows: 'The right of the physician to be secure in his privilege of practicing his profession is thus made to depend not upon any definition which the law furnishes him as to what shall constitute "grossly improbable statements" but upon the determination of the board after the statement is made and simply upon its opinion of its improbability. No definite standard is furnished by the law under this provision whereby a physician with any safety can advertise his medical business; nor is there any definite rule declared whereby after such advertisement is had the board of medical examiners shall be controlled in determining its probability or improbability. The physician is not advised what statements he may make which will not be deemed "grossly improbable" by the board. No rule is provided whereby he can tell whether the publication he makes will bring him within the ban of the provision or not . . . (148 Cal. 595, [113 Am.St.Rep. 315, 7 Ann.Cas. 750, 3 L.R.A.N.S. 896, 84 P. 41].) If a physician's license is to be revoked for "grossly improbable statements"; if he is to be thereby deprived of his means of livelihood, . . . on the ground that he has made "grossly improbable statements" in advertising his medical business—it is requisite that the statute authorizing such revocation define what shall constitute such statements so that the physician may know in advance the penalty he incurs in making them.' Other methods of regulation may also be allowable; but a law or ordinance by or under which a lawful occupation, in itself, when properly conducted, in no wise injurious to persons, property or the public interest, may be absolutely prohibited at the dictation of any official body without other cause than its own will or desire, is beyond the legislative power and to that extent void."

In the light of the Hewitt and Dart cases can it be said that the individual and personal satisfaction of the members of the council of the city of Redding constitutes a more reasonable standard of qualifications to be met by an applicant than the provisions of the ordinances in such cases? Or in any event, can the personal satisfaction of the council ever

be made the criterion of the right to engage in a lawful business?

In my opinion it must be admitted that by the wording of the Redding ordinance it is a manifest attempt to confer upon the council of the city of Redding the power to grant or deny a license to an applicant arbitrarily no matter what may be the *present facts* which may be submitted by the applicant for the purpose of obtaining a license. Under the wording of such ordinance subjective objections could be raised to an applicant for almost any personal reasons conceivable, be it good or bad, thereby resulting in a denial to him of the privilege of having an equal opportunity with others to make an honest livelihood. Under such unbridled authority unjust discrimination may be made because of nationality, religion, political adherence, or any other real or fancied dissatisfaction. Such a delegation of arbitrary authority is contrary to the basic principles upon which American liberties are founded. The right of citizens to pursue any lawful business or vocation in any manner not inconsistent with the equal rights of others must be free to all alike and upon the same conditions.

Assuming that an applicant with an unblemished record was denied a license on the basis that the council was not satisfied that he would not resort in the future to the acts prohibited, what, then, might be included in a petition to the courts to show that the council was not in fact satisfied he would not use various means prohibited in the solicitation of memberships? As the question of satisfaction is one which could exist only in the minds of the members of the council, how then can it be construed to be an objective standard of qualifications? Is that not the very situation which the Supreme Court of the United States condemned and found to be invalid in the case of *Yick Wo* v. *Hopkins,* 118 U.S. 356 [6 S.Ct. 1064, 30 L.Ed. 220], when, in ruling upon certain ordinances passed by the Board of Supervisors of the City and County of San Francisco granting to itself the power to prohibit the operation of a laundry in a wooden building, the court stated:

"There is nothing in the ordinances which points to such a regulation of the business of keeping and conducting laundries. They seem intended to confer, and actually do confer, not a discretion to be exercised upon a consideration of the.

circumstances of each case, but a naked and arbitrary power to give or withhold consent, not only as to places, but as to persons. So that, if an applicant for such consent, being in every way a competent and qualified person, and having complied with every reasonable condition demanded by any public interest, should, failing to obtain the required consent of the supervisors to the prosecution of his business, apply for redress by the judicial process of mandamus to require the supervisors to consider and act upon his case, it would be a sufficient answer for them to say that the law had conferred upon them authority to withhold their consent, without reason and without responsibility. The power given to them is not confined to their discretion in the legal sense of that term, but is granted to their mere will. It is purely arbitrary, and acknowledges neither guidance nor restraint.''

See, also, *Cantwell* v. *Connecticut*, 310 U.S. 296 [60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352].

The case of *Riley* v. *Chambers*, 181 Cal. 589 [185 P. 855, 8 A.L.R. 418], is relied upon by respondent and quoted with approval in the majority opinion. However, the Riley case would seem to be directly contra to the purposes for which it is cited. It holds (1) that the right to engage in a lawful occupation cannot be taken away under the guise of regulation but that such business (real estate broker) may be regulated in the interest of the public even though such regulation involves a degree of limitation upon the exercise of the right; (2) that the powers of the Real Estate Commissioner as set forth in the act are not arbitrary in that to deny a license *"there must exist facts* which reasonably justify his conclusion that the applicant is not of good character and reputation.'' (Italics added.) The court therein further held that as the single and primary purpose of the act was to require that real estate brokers ''be honest, truthful and of good moral character,'' the prerequisite of written applications accompanied by a certificate of good character was a reasonable requirement, and that if the commissioner should decide to refuse a license, such refusal must be based on existing facts which reasonably justify such conclusion.

In the present case the ordinance under consideration contains no requirement as to existing facts. To the contrary the prohibition against one ''likely to'' commit the acts mentioned compels the council to speculate upon what may or may not happen in the future. In other words, to leave

the realm of present fact and by assuming to look into the future, make a present finding, and upon such ethereal facts to grant or deny a license. How can it be said that belief or mere suspicion as regards an act which may or may not take place in the future, is a valid enumeration of conditions to which all persons similarly situated may knowingly conform and thereby qualify for a license? How can it be said that the inherent right of an American citizen to engage in a lawful occupation can be subjected to the whim and caprice of a subjective belief or suspicion in the minds of a city council, or anyone else? Obviously such a provision is impossible of execution.

No case has been cited nor has one been discovered holding that mere suspicion, surmise, fear or belief concerning what an applicant for a license may or may not do in the future would warrant a refusal thereof. To the contrary, the only cases found in which the courts have passed directly upon such questions have been uniformly in accord with the decision in the case of *State ex rel. Haddad* v. *Charleston*, 92 W.Va. 57 [114 S.E. 378, 27 A.L.R. 323], wherein the court held that a council may not refuse a license upon the bare fear or surmise that an applicant, if a license were granted to him, would violate any of the conditions imposed by the ordinance. Also, see, *People* v. *Hilliard*, 50 N.Y.S. 909; *Hipes* v. *State*, 18 Ind.App. 426 [48 N.E. 12].

In the case of *Gates* v. *Haw*, 150 Ind. 370 [50 N.E. 299] the court, recognizing the impossibility of such provisions, stated that as "the things forbidden in the section relate to acts and things that may transpire after the grant of the license, it would be unreasonable to suppose that a trial of such questions was intended to precede the granting of the license."

A cursory examination of the Business and Professions Code, under which the Riley and Fernel cases arose, will convince the examiner that every act set forth therein regulating and licensing a business or profession has as an integral part thereof certain objective requirements and standards as of the *present* which the applicant must meet before a license will be issued. Such legislative acts come squarely within the rule that:

"An ordinance forbidding the conducting of certain kinds of business without permission of council . . . which does not prescribe any rules or conditions with which the applicant

must comply, or by which the council is to be governed in determining whether the permit will be granted or refused, does not establish a uniform regulation, but on the contrary, vests the council with an arbitrary discretion, which it may exercise in favor of one citizen and against another, although the circumstances may be practically the same.'' (McQuillan on Municipal Corporations, vol. 3, p. 667.)

If, then, the business to be regulated by the ordinance in question is a lawful occupation, the case of *In re Blanc*, 81 Cal. App. 105 [252 P. 1053], would appear to be controlling. The court there stated:

''In any case the authority to withhold a permit to engage in lawful business, to be sustained, must be regulated by provisions of the law which are reasonable and which apply to matters of conduct upon the part of the applicant in some way affecting the health, morals, or safety of the community. *The law must fix standards with such certainty that the citizen may be apprised of their requirements, and it is not enough that the commissioners may establish their own conditions. If they have the power to act regardless of any legislative guidance and control, the authority conferred is arbitrary and unlawful.*'' (Italics added.)

It is impossible for me to conceive how and in what manner the morals, health or general welfare of this court, or those of the community, would be affected by solicitation to join the Sacramento Chamber of Commerce, the Blank Luncheon Club, the California Conference of Judges, or a Union of the California State Employees. Nor can I conceive of anyone seriously so contending. And if this be true, how, then, can the plain, unambiguous language of the Blanc case, that the law must establish definite standards, be avoided?

It was also held in the later case of *South Pasadena* v. *San Gabriel*, 134 Cal.App. 403 [25 P.2d 516], wherein the court had before it an ordinance requiring a permit to drill for water, oil, etc., that:

''*Where a business is lawful, and permits for its inauguration are required, an ordinance providing the requirement must contain rules and regulations to be followed by the officer or officers who consider applications for permits.*'' (Italics added.)

That California is not alone in this regard is evidenced by the statement of the general rule found in 12 A.L.R. 1436:

"The generally accepted rule is to the effect that a statute or ordinance which vests arbitrary discretion with respect to an ordinarily lawful business, profession, appliance, etc., in public officials, without prescribing a uniform rule of action, or, in other words, which authorizes the issuing or withholding of licenses, permits, approvals, etc., according as the designated officials arbitrarily choose, without reference to all of the class to which the statute or ordinance under consideration was intended to apply, and without being controlled or guided by any definite rule or specified conditions to which all similarly situated might knowingly conform,—is unconstitutional and void."

The majority opinion, in conclusion, states that "petitioner may not complain of the possibility of arbitrary or discriminatory conduct on the part of the council in passing upon applications for licenses or that it might deny such applications on the ground that the applicant was likely to resort to force, violence, etc.," since petitioner made no application to the council for a license and thereby gave it no opportunity to determine his qualifications. "Proof of an abuse of power . . . has never been deemed a requisite for attack on the constitutionality of a statute . . . the rule is not based upon any assumption that application for the license would be refused. . . . One who might have had a license for the asking may therefore call into question the whole scheme of licensing when he is prosecuted for failure to procure it. . . ." (*Thornhill* v. *Alabama, supra*); *Uhden, Inc.* v. *Greenough,* 181 Wash. 412 [43 P.2d 983, 98 A.L.R. 1181].)

It is true, as the majority opinion states, he was not charged with a violation of section 1, which makes solicitation by force and violence a crime, and it is also true that he was charged with failing to secure a license in accordance with section 2. It is to be noted, however, that the last mentioned section provides "it shall be unlawful . . . to solicit membership for compensation . . . without first having procured a license . . . *as in this ordinance provided."* (Italics added.) Obviously, then, one must turn to the provisions in the ordinance relating to the procedure to be followed by an applicant desirous of obtaining a license. Such provisions are that an application shall be made in writing to the council (section 4); that such application shall be filed with the clerk at least one week prior to the meeting of the council

at which it is to be heard (section 5), and at such hearing the council shall determine to its satisfaction whether or not the applicant is not likely to use force, violence, threat, menace, coercion, intimidation or corrupt means in his proposed work of solicitation (section 6).

By virtue of such reference in section 2 to the procedure, as set forth elsewhere in the ordinance, all sections relating thereto must be read in conjunction with each other.

The majority opinion states that even though it be assumed that the provision relating to the satisfaction of the council as to the possibility of an applicant using force, violence, threat, menace, coercion, intimidation or corrupt means, is unreasonable and uncertain because it involves speculation as to what one might do in the future, by virtue of the saving clause contained in the ordinance, the provision with respect to a showing regarding the use of such acts may be eliminated, and the balance of the ordinance, including sections 2, 4, and 7 under which petitioner was convicted, may stand as valid. However, as previously noted, by virtue of the reference in section 2 and to other sections within the ordinance, the present case is taken out of the rule laid down in the Bell case that if valid and invalid sections of an ordinance be severable, the valid portions may stand if complete within themselves. Insofar as the present case is concerned it would be of little consequence whether one or more innocuous sections of the ordinance were valid if the provision relating to the procedure necessary to acquire an application is held to be invalid. Assuming that only that portion of section 2, which prescribes that it shall be necessary to first obtain a license to solicit, be valid, the question of how to obtain a license still remains, and if section 6 be invalid, then neither regulation nor rule, whether valid or invalid, can be found in the ordinance, and the ultimate result is the same.

Even assuming that the conclusion of the majority that speculation to the subjective satisfaction of the conscience of the council is a reasonable standard of qualifications for the guidance of such body, cannot it be said that the wide difference of opinion between the construction placed upon the words, force, violence, threat, menace, coercion, intimidation or corrupt means by the majority and the construction applied to the same words by the Supreme Court in the Bell case is a very practical illustration of the necessity for

the rule that if an average man, after reading a regulatory ordinance with due care, cannot understand whether he will incur a penalty or not, then such ordinance is void for uncertainty. (19 R.C.L. 810.) Surely a layman is not to be held to a higher degree of understanding of the legal implication of his acts under such an ordinance than the degree of misunderstanding with which the Supreme Court and the majority of this court view the same language. If there can be no unanimity of interpretation of such regulatory language by the courts, surely it cannot be said that the average individual not schooled in the law can read the same with understanding and readily conclude whether he will incur a penalty or not.

In my opinion, the ordinance viewed from every perspective is void upon its face, and therefore it was not necessary for petitioner to seek a license under it to attack its constitutionality. (*Lovell* v. *Griffin,* 303 U.S. 444 [58 S.Ct. 666, 82 L.Ed. 949].)

The underlying viciousness of such an ordinance is in the uncontrolled and arbitrary suppression which may be exercised through personal whim and caprice, thereby effectively suppressing legitimate business activity. It is an evil inherent in the licensing system. The power of the licensing body is pernicious not merely because of a sporadic abuse of the power but more so because of the pervasive threat inherent in the very existence of the power. The existence of an ordinance which readily lends itself to such harsh and discriminatory enforcement results in a continuous restraint of everything which reasonably might be regarded within its purview. (*Thornhill* v. *Alabama, supra.*) This does not mean that our constitutional guarantee of liberty amounts to an unrestrained disregard of the rights of others. Such guarantee only implies an absence of arbitrary restraint and does not deny to government the power to provide such restrictions upon one's acts as are reasonable and imposed in the interests of the community.

The business of soliciting memberships in organizations being a lawful occupation, the power of a municipality to regulate such a business is limited to the exercise thereof, and such regulation must be by fixed rules and regulations and cannot be left to a subjective determination of the question to the personal satisfaction of a city council. Other-

wise it thus could be made the instrument of arbitrary suppression of free enterprise. Denial of an application under the Redding ordinance would amount to a conviction upon a charge neither made nor proven, and would be an absolute denial of due process. Such uncontrolled official suppression cannot be made the substitute for the duty to maintain order in connection with the exercise of the right. (*Hague* v. *C.I.O.*, 307 U.S. 496 [59 S.Ct. 954, 83 L.Ed. 1423].)

That another unfortunate effect of the ordinance is to confer upon the City Council of Redding the power to determine the extent to which the ordinance will be operative is well illustrated by the record in this case. The tax collector testified that more than forty notices were sent out and in each instance it was either a labor organization or an individual connected with such an organization to whom the notice was addressed. The only limitation upon the exercise of such arbitrary power exists solely in the consciences of the present members of the council. The succeeding members of the council might have an entirely different view, i. e. instruct the tax collector to send notices only to veteran organizations, fraternal bodies or luncheon clubs. It is not enough to say, as does the majority opinion, that it must be presumed that the council will act properly. It is not a question of whether the power conferred will be properly exercised, but whether an ordinance which attempts to grant such sweeping arbitrary power is valid. If it is not, then it is no answer to say that it will not be abused. The mildest form of despotism has no place in our constitutional government. In a nation existing under a government of laws the conduct of its citizens cannot be subjected to the arbitrary will of either an official or an official body.

A petition for a rehearing was denied April 11, 1944. Peek, J., voted for a rehearing.